[Civ. No. 9468.   Third Dist.   Mar. 27, 1959.]

JOHN THURSTON CHAPMAN et al., Respondents, v. MINNIE CHAPMAN, Individually and as Administratrix, etc., Appellant.

Wade H. Coffill, Willens, Boscoe & Short and Patricia Lane for Appellant.

Hoover, Lacy & Bienvenu for Respondents.

VAN DYKE, P. J.—Respondents, who were plaintiffs in this action in the trial court, are the heirs at law of William Robert Chapman, deceased. William's widow, Nora, was joined during the proceedings for reasons not here material. The other respondents, and who were the original plaintiffs, are his three children, John Thurston Chapman, Ethel May Ramey, and Robert William Chapman. Appellant is the widow and the administratrix of the estate of John Chapman, who was the father by a former marriage of William. This appellant and her deceased husband, John, by impressing a action was brought to enforce an *inter vivos* contract between constructive trust upon certain real property inventoried by appellant in the estate of John, who had died intestate. Appellant admitted the execution of the contract, but contended herein that it had been rescinded. She also asserted that respondents were estopped to enforce it by reason of William's acts and conduct during his lifetime. The decree of the trial court was adverse to appellant and she appeals.

The real property which is the subject of this action was the separate property of John. In 1941, appellant, Minnie Chapman, filed against John a suit for separate maintenance, and during its pendency the agreement in question was entered into. By that agreement John bound himself to make and never to revoke, so long as he and Minnie lived together as husband and wife, a will whereby he disposed of three parcels of real property in the following manner: Parcel 1 to Minnie. Parcel 2 to William, "or his heirs or lineal descendants." Parcel 3, one-half to Minnie and one-half to William "or his heirs or lineal descendants." The contract was executed in 1941. Shortly thereafter, John executed a will in accordance therewith. On February 25, 1952, John requested and received his will from the attorney who drafted the same. He then revoked it. On March 8, 1952, he conveyed the subject real property as follows: Parcel 1 to Minnie and himself in joint tenancy. Parcel 2 to William and himself in joint tenancy. Parcel 3 to himself, to Minnie, and to William in joint tenancy. William died December 26, 1953, predeceasing John, who died May 26, 1956.

The decree of the trial court declared respondents to be the owners in equal shares as tenants in common of Parcel 2. It further declared that respondents were the owners in equal shares and as tenants in common of an undivided one-half interest in Parcel 3. Respondents asserted no claim to Parcel 1 which had vested in appellant on the death of John.

Appellant contends as follows: 1. Respondents were only incidental beneficiaries of the contract between John and Minnie and as such not entitled to enforce it. 2. The contract was rescinded prior to John Chapman's death, thereby terminating any interest of respondents as third party beneficiaries. 3. Respondents are estopped to claim under the contract. 4. The issue of estoppel was specially pleaded and the trial court committed error in failing to make any finding thereon.

We shall first consider appellant's contention that respondents were only incidental beneficiaries of the contract. Section 1559, Civil Code, provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Although respondents contend that the language of the contract makes it clear as a matter of law that it was made expressly for the benefit, first, of John's son, William, and second, and in case of his failure to take, then for the benefit of his heirs and lineal descendants, the court treated the document at trial as sufficiently uncertain upon that matter to justify the receipt of interpretative evidence to ascertain intent. We think this was proper procedure. With respect to Parcel 2, the obligation of John was to devise "to the said William Robert Chapman . . . or his heirs or lineal descendants." With respect to Parcel 3, the obligation of John was to devise to appellant one-half and then to devise one-half "to the said William Robert Chapman or his heirs or lineal descendants." The language "to William Robert Chapman or his heirs or lineal descendants" may reasonably be considered as creating an element of uncertainty as to who was to benefit. Also, in several other places in the contract, uncertainty was created by the reference being to William alone without mention of his heirs or lineal descendants. For instance, the contract provided that John might sell any or all of the property during his lifetime and that if he did so the proceeds of sale should be kept, managed and reinvested in his discretion; that he was not to devise those proceeds thereafter in such a way as to defeat the purposes of the agreement, but on the contrary should devise the proceeds to his wife and to William, no mention being made of William's heirs or descendants. Without going further, we hold that there was sufficient uncertainty on the subject of benefits to make the problem one of construction to ascertain intent. The evidence received in aid of interpretation was in some respects conflicting and in other respects capable of conflicting inferences. The problem of

construction thus became one of fact for resolution by the trial court; and, on appeal, it presents the usual situation which poses the inquiry, Does the evidence contain substantial support for the construction adopted? We hold that it does. There is, first, the reference not only to William, but to respondents as well, thus strongly indicating an intent to include them as beneficiaries. Next, there was the situation under which the contract was made, that is, the pendency of the separation suit, the implied desire of John by providing for appellant out of his separate property to reserve the rest to his son, and his grandchildren. There was also the implied desire of John to save his marriage, even at the expense of giving up certain rights to dispose of his separate property as he saw fit and to retain the rest. Without going further, we hold that the construction adopted by the trial court is reasonable and is substantially supported.

Turning now to the contention that John rescinded the agreement, the following appears in the record: There was evidence that when John retook his will and revoked it by intentional destruction he did so with no intent to breach or cancel, or for cause rescind, the contract between himself and his wife, but only, and acting on inexpert and lay advice, with the intent to carry out the terms of his contract by the use of joint tenancy deeds, with the purpose of avoiding probate costs. The deeds were actually drawn according to his instructions by a layman, and were drawn in such a way, as is also apparent from the record here, that had he predeceased William, which would normally be expected, the disposition of the property would have met the requirements of the contract. Although John's method of performance did not square with his contractual obligations, the court could infer that he was unaware of this, believed that he could accomplish the same effect by what he did, and that he possessed at the time no intent whatever to rescind or to do other than to perform his obligations fully. As it turned out, appellant received all that she would have received under the promised will. She lost nothing by the change in method. What she is seeking to do here is to gain by the fortuitous fact that William died before John. We hold that the trial court's finding that John did not rescind the agreement and that it was in full force and effect at his death is substantially supported.

We turn now to appellant's contention that respondents are estopped to claim the contract was unrescinded. This estoppel arises, it is argued, by reason of William's conduct.

It is claimed that in 1952, when William became a joint tenant with John in Parcel 2, and also became a joint tenant with his father and appellant in Parcel 3, he received present existing interests during his lifetime to which he was not entitled under the agreement, also, that he received certain tax advantages not otherwise available to him and, had he survived his father and appellant herein, would have received considerably more property than provided for in the agreement; that the acceptance of these benefits is presumed. It is also pointed out that at least one of respondents knew immediately after William's death of the proceedings then taken to terminate the joint tenancies of record and, therefore, knew that these tenancies had been created notwithstanding the contract. The argument runs further that by William's acceptance of these benefits he led his father to act in reliance upon the situation created and not to keep a will in effect; that, therefore, his successors in interest cannot equitably be permitted to escape the effects of the acts of their predecessor in interest and that their cause is tainted by the same estoppel as would have barred him. These contentions have no merit. The burden of proving estoppel lay upon appellant as being an affirmative defense interposed by her to respondents' cause of action. The least that can be said in opposition to her point is that there was no such evidence as compelled the trial court as a matter of law to hold that estoppel had been made out. The elements of estoppel are well known. Estoppel is well defined in section 1962, Code of Civil Procedure, subdivision 3, as follows: ''Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it.'' Appellant does not point in her brief to any evidence that William or any of the respondents knew of the joint tenancy deeds when they were drawn or that they in any way participated in or induced their execution; nor does she point out evidence that the mere silence of William when he learned of the situation in any way deceived John; nor does she point out evidence to show that John was ignorant of the results of his acts in such a way as to make William's conduct deceitful; nor is evidence pointed out to indicate John in any way acted upon or relied on any conduct of William or the respondents herein to his injury. The trial court was not obliged to find in favor of the affirmative defense of estoppel.

■ Finally, appellant contends that the court erred in that it made no specific finding upon estoppel. However, the court clearly implied an adverse finding by its conclusions of law and judgment. The trial court also filed a brief memorandum designated "Decision on Issues of Trial" and directed the preparation of findings by plaintiffs in accord therewith. Findings were prepared and a copy thereof was served upon attorneys for appellant. The record does not disclose that different or further findings were requested. The proof of estoppel was weak. The findings made afford a fair inference that the trial court had by its judgment ruled adversely to appellant upon the claim of estoppel. Appellant did not when served with the proposed findings object to the lack of a specific finding upon estoppel. We must say from the whole record that it is highly improbable that a reversal for such technical error as may be here present would produce a different result, and we must also say from the record that there has been no miscarriage of justice. Therefore judgment ought not to be reversed on the technicality advanced.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied April 17, 1959, and appellant's petition for a hearing by the Supreme Court was denied May 20, 1959.